Laily Boutaleb
LBE Law Firm
2121 Avenue of the Stars, Suite 800
Los Angeles, CA 90067
Tel: 424) 523-2594
Fax: 310) 943-2232
laily@Lbelawfirm.com

## THE UNITED STATES DISTRICT COURT FOR THE

## DISTRICT OF COLUMBIA

| | |
|---|---|
| RAOOF EK HAGHIGHI<br>59 Lorne st Reading<br>RG1 7YW<br>United Kingdom<br><br>           Plaintiff,<br><br>vs.<br><br>United States DEPARTMENT OF STATE;<br>ANTONY J. BLINKEN, Secretary of State, in<br>his official capacity; 1600 Pennsylvania Avenue<br>NW, Washington, DC 20500<br><br>RENA BITTER, Assistant Secretary of<br>Consular Affairs, in her official capacity; JULIE<br>M. STUFFT, Deputy Assistant Secretary for<br>Visa Services, in her official capacity; Bureau<br>of Consular Affairs, U.S. Department of State,<br>600 19th Street, NW Washington, DC 20036;<br><br>MEREDITH MCEVOY, Consul General for<br>U.S. Embassy in London, United Kingdom, in<br>her official capacity; Embassy of the United<br>States of America, 33 Nine Elms Lane, London,<br>SW11 7US, United Kingdom;<br><br>ALEJANDRO MAYORKAS, Secretary of the<br>U.S. Department of Homeland Security, in his<br>official capacity; Alejandro Mayorkas,<br>Secretary of Homeland Security, Washington,<br>DC 20528<br><br>           Defendants. | Case No.: 1:23-cv-1329<br><br><br>**PETITION FOR WRIT OF MANDAMUS AND COMPALINT FOR INJUNCTIVE AND DECLARATORY RELIEFM** |

PETITION FOR WRIT OF MANDAMUS AND COMPALINT FOR INJUNCTIVE AND DECLARATORY
RELIEFM - 1

## PREFATORY STATEMENT

1.      This is an action to compel Defendants to adjudicate Plaintiff Raoof Ek Haghighi's immigrant visa application, which has been pending at the U.S. Embassy in London, United Kingdom (hereinafter "Embassy") for nearly four years, since June 2019.  Plaintiff Haghighi is the beneficiary and self-petitioner for an Extraordinary Ability E-11 Category Immigrant Visa (hereinafter after "E-11"E-11), whose petition was approved by Defendant U.S. Citizenship and Immigration Services ("USCIS") and thereafter sent to the Embassy for consular processing.

2.      Plaintiff and spouse had a dream of continuing his success as an acclaimed artist and painter in the United States.

3.      Unfortunately, Plaintiff's wife died in November 10, 2019. Plaintiff is seeking to continue their dream.

4.      Plaintiff and his wife attended an immigrant visa interview together in June 2019 (prior to the COVID-19 pandemic) with the hopes of an immigrant visa issuance. Plaintiff's wife never got her wish.

5.      Plaintiff has provided his wife's Death Certificate and all necessary paperwork to Embassy. To date, Plaintiff's immigrant visa application remains in "administrative processing."

6.      Congress has directed the Department of State to decide such applications within 30 days.

7.      Despite numerous inquiries, the Embassy has failed to act on the application. As such, Plaintiff seeks an order from this Court compelling Defendants to adjudicate his Immigrant Visa application.

## JURISDICTION

8.      This Court has jurisdiction to hear this case under 28 U.S.C. § 1361, The Mandamus Act,

and 28 U.S.C. § 1331, Federal Question Jurisdiction.

9.    The Court may grant declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201-2202, 5 U.S.C. § 702, and 28 U.S.C. § 1361.

10.    Defendants have waived their sovereign immunity under 5 U.S.C. § 702.

## VENUE

11.    Venue is proper in the U.S. District Court for the District of Columbia pursuant to 28 U.S.C. § 1391(e)(1)(C) because this is a civil action against officers and agencies of the United States in their official capacities; brought in the district where defendants reside because both Defendants, Department of State and Department of Homeland Security, are headquartered in the District of Columbia.

## PARTIES

12.    Plaintiff Raoof EK Highighi is a citizen of the United Kingdom and renowned painter and the beneficiary of an immigrant visa petition (Form I-140) under E-11 Category also known as EB-1, which was approved by USCIS on or about August 10, 2018.

13.    Plaintiff has filed an immigrant visa application that has been pending at Embassy since June 2019.

14.    Defendant ANTONY J. BLINKEN is the U.S. Secretary of State. He is sued in his official capacity, as he is charged with all responsibilities relating to visas, the administration of visa-related laws, and consular visa processing, including the U.S. Embassy in London where Plaintiff's application is pending.

15.    Defendant RENA BITTER is the Assistant Secretary for Consular Affairs for the U.S. Department of State.  She is sued in her official capacity, as she is charged with oversight of all

consular – including immigrant visa – matters.

16.     Defendant JULIE M. STUFFT is the Deputy Assistant Secretary for Visa Services at the U.S. Department of State. She is sued in her official capacity, as she is charged with all matters relating to visas and the administration of visa-related laws.

17.     Defendant MEREDITH MCEVOY is the Consul General for the U.S. Embassy in London, United Kingdom. She is sued in her official capacity, as she is responsible for oversight of all consular activities of the Embassy in London, United Kingdom.

18.     Defendant ALEJANDRO MAYORKAS is the Secretary of the U.S. Department of Homeland Security ("DHS"). He is sued in his official capacity, as he is delegated authority over, *inter alia,* (1) the granting or refusals of visa applications, including coordinating the timely completion of background checks with the Federal Bureau of Investigation and (2) administering and enforcing immigration laws.  6 U.S.C. § 236(b).

## OVERVIEW OF THE LAW

19.     The E-11 category is an employment-based petition.

20.     An individual may be eligible for an employment-based first-preference visa. 8. U.S.C. § 1153(b)(1)(A) and 8 C.F.R. § 204.5(h).

21.     Eligibility for Extraordinary Ability Classification requires demonstration of extraordinary ability in the sciences, arts, education, business, or athletics, through sustained national or international acclaim, and achievements that have been recognized in the field through extensive documentation. 8. U.S.C. § 1153(b)(1)(A) and 8 C.F.R. § 204.5(h)(3).

22.      A noncitizen, or any person on their behalf, may file an I–140 petition for immigration visa classification under  8. U.S.C. §1153(b)(1)(A) of as a person of extraordinary ability in the

sciences, arts, education, business, or athletics. 8 C.F.R. § 204.5(h).

23.    Extraordinary ability means a level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the field of endeavor. 8 C.F.R. 204.5(h)(2).

24.    A petition filed on behalf of a person with extraordinary ability does not need to be supported by a job offer; therefore, anyone can file the petition on behalf of the person, including the noncitizen who may file as a self-petitioner. *See* 8 C.F.R. 204.5(h)(5). *See* 8 C.F.R. 204.5(h)(1) (providing that "[a]n alien, or any person on behalf of the alien," may file the petition).] The person must still demonstrate, however, that he or she intends to continue work in the area of his or her extraordinary ability and that his or her work will substantially benefit the United States in the future. *See* 8. U.S.C. § 1153(b)(1)(A)(ii) and 8. U.S.C. § 1153(b)(1)(A)(iii)

25.    Once USCIS makes an adjudication and if the petition is approved, the file is then sent to the National Visa Center (hereafter "NVC"), a component agency within USCIS.

26.    Thereafter, if the beneficiary is abroad, they file Form DS-260, which is an immigrant visa application, pays a $325 fee, and submits supporting documentation.

27.    Once NVC determines that the application is complete, it is placed in a queue to schedule an interview at the U.S. Embassy or Consulate abroad.

28.    Following the immigrant visa interview with a consular officer, the visa applicant is either granted or refused an immigrant visa.

29.    One of the refusal grounds is under Section 221(g) of the Immigration and Nationality Act (INA) (hereinafter "§ 221(g) refusal"), 22 C.F.R. § 42.81(a) and 8 U.S.C. § 1201 which is used, inter alia, when a refusal is predicated on Administrative Processing.

A § 221(g) refusal indicates that the applicant did not establish eligibility for a visa to the satisfaction of the consular officer. U.S. Department of State, Administrative Processing Information, available at: https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/administrative-processing-information.html.

30.      A consular officer may determine that further information is needed from sources other than the applicant to establish visa eligibility. Then the visa application will be refused warranting further administrative processing.  Once administrative processing is complete the consular officer will determine eligibility for granting or denying a visa. The consular officer will inform the applicant at the conclusion of the interview if their case requires administrative processing. *Id.*

31.      Once additional documents requested are submitted or upon resolution of administrative processing, the consular officer can reconsider the visa application originally refused under 221(g) and determine applicant's eligibility. *Id.*

32.      When the consular officer provide a 221(g) notice to the applicant they will advised if further documentation or information is needed from them or if the case requires further administrative processing. *Id.*

## FACTUAL AND PROCEDURAL HISTORY

33.      Plaintiff is a renowned painter who resides in and is a citizen of the United Kingdom.

34.      Plaintiff is a recognized visual artist/painter, who has had numerous awards and exhibits in the U.K. and internationally.

35.      Plaintiff has had many articles written about him and his work. For example, he has garnered awards such as the Sky Arts Portrait of the Year award, which was aired and televised

live.

36.    In addition, he was shortlisted and part of Exclusive Artist Interviews  2017 *BP Portrait Awards*, one of the most prestigious painting competitions globally.  Plaintiff has been featured in over 100 articles and news media because of his recent exhibition, including The Independent, *Yahoo!* News, Evening Standard, and National News Arts & Culture, the cover of *Artists and Illustrators* U.K.'s best-selling magazine for artists, "Winning Ways, our Artist of the Year 2011 Reveals his Techniques," His work has been seen in numerous group and solo exhibitions internationally, including the Threadneedle Prize (2012–4), the Royal Society of Portrait Painters Annual Exhibition (2014–5), and the BP Portrait Award 2011.

37.    Plaintiff continues to have his work showcased in various exhibitions, including the Royal Institute of Oil Painters, the Mall Galleries in London (2022). The Royal Society of Miniature Painters, Sculptors and Gravers 125th Anniversary Exhibition, London (2019 and 2021), and Artelibre at Rome Art Gallery in Spain (2019).

38.    Plaintiff is pursuing an immigrant visa to allow him to live and work in the United States. He already has had exhibitions and joint collaborations with U.S.-based artists and organizations. Most recently Art Grind, a New York based podcast, led by well-known American artists, devoted an episode to Plaintiff.  There are numerous artists, organizations and galleries that have shown an interest in collaborating with him.

39.    It was Plaintiff and his late wife's dream to continue his success and growth in the United States' artistic community. Plaintiff has a sponsor in the United Kingdom  for his exhibition and due to their success, they aim to have exhibitions in the United States.

40.    On or around April 19, 2018, Plaintiff filed an I-140 E-11 Petition on behalf of himself,

pursuant to 8 U.S.C. § 1153(b)(1)(A).

41.     USCIS approved the I-140 Petition on or about August 10, 2018 and forwarded, through NVC, to the U.S. Embassy in London, United Kingdom for further processing and scheduling of an immigrant visa interview.

42.     On June 10, 2019, Plaintiff and his late wife appeared at the Embassy for their immigrant visa interview.  At the conclusion of the interview, Plaintiff and his late wife were given a §221(g) refusal for administrative processing.

43.     The refusal was based on the consular officer's conclusion that further administrative processing was necessary. At the time, the consular officer requested the Plaintiff's late wife's police certificate from Australia.

44.     At the interview, the consular officer indicated that the basis of the refusal could be overcome if Plaintiff and his wife provided additional documentation, in the form of the police certificate from Australia (requested from Plaintiff's wife only), and once their completed medical examinations were received by the Embassy.

45.     Medicals were submitted and received on or about the same date.

46.     Plaintiff's late wife also obtained and forwarded her Australian police certificate to the Embassy shortly thereafter.

47.     At the end of the interview, they were given an Embassy sheet indicating that their visa was refused under Section 221(g) of the Immigration and Nationality Act, pending "*Additional administrative processing. This is mandatory and cannot be waived. There is no set timeframe this will take and no mechanism to check the status of your application. The Embassy will contact you when the processing is completed.*"

PETITION FOR WRIT OF MANDAMUS AND COMPALINT FOR INJUNCTIVE AND DECLARATORY RELIEFM - 8

48.     In addition, a box was checked for "*submission of additional evidence"* which was written as the Australian police certificate for Plaintiff's late wife only.

49.     Since approximately April 2, 2020 Plaintiff, through counsel, has been in continuous contact with the Embassy.

50.     As noted, the only document that was requested in addition to a general administrative processing refusal was the police certificate for the derivative beneficiary wife, which was submitted to the Embassy.

51.     Plaintiff's wife died on November 10, 2019. Thereafter, her death certificate was submitted to the Embassy on or about April 7, 2020 and she was removed from the application.

52.     Therefore, the only pending matter is Plaintiff's ongoing administrative processing, without a request for any further documentation.

53.     It has been almost four years since Plaintiff and his late wife submitted the additional requested document needed and to date Plaintiff still has not received an adjudication on his administrative processing.

54.     During these nearly four years, Plaintiff, through counsel, emailed and made numerous status inquiries only to receive the same response that the visa application is "*currently under administrative processing*" and that "*at this time, nothing is needed from the Applicant*."

55.     Additionally, Plaintiff has been checking the status of his visa application on the Consular Electronic Application Center (CEAC), which reflects the same.

56.     Counsel has sent at least seven (7) follow up and status emails to the Embassy, every few months April 2020, January 2021, May 2021, June 2021, November 2021, January 2022, and August 2022.

57.    In particular, on June 17, 2021, counsel sent an email inquiring about CEAC website's update on Plaintiff's case noting his case as "expired" and all his file "destroyed" due to lack of communication in pursuing his immigrant visa.

58.    Counsel immediately brought this up to the Embassy's attention and the Embassy replied on June 22, 2021 confirming that the case was not destroyed and is still undergoing administrative processing.

59.    Plaintiff's visa application remains undecided and has been stuck in the limbo of "administrative processing" for almost four years, despite Plaintiff's full cooperation and frequent efforts to resolve the delay.

60.    There have been no documents that have been requested and the one document requested was provided to the Embassy shortly after the interview.

61.    As a result of this delay, Plaintiff has been unable to pursue his career plans and goals in the United States and cannot fully attend to his career and life in the United Kingdom as he has no idea if or when he will be able to relocate to the United States.

62.    Plaintiff is further limited in traveling to the United States, and pursing his art exhibitions and collaborations on a non-immigrant basis, as he now has a pending immigrant visa case and holds an immigrant intent. This immigrant intent prohibits him from showing a non-immigrant intent, which is required for issuance of almost all non-immigrant visas/status and entry to the United States. 9 FAM 403.10 and 9 FAM 401.  This has damaged and caused harm to him professionally and inhibited his professional plans and growth and has paused his career goals and plans in the United States.

## **CAUSES OF ACTION**

## FIRST CAUSE OF ACTION:

### (Violation of the Mandamus Act, 28 U.S.C. § 1361)

63.    Plaintiff re-alleges and incorporates by reference, as is fully set forth herein, the allegations contained in paragraphs above.

64.    Mandamus is available to compel a federal official or agency to perform a duty if: (1) there is a clear right to the relief requested; (2) defendant has a clear, non-discretionary duty to act; and (3) there is no other adequate remedy available. See 28 U.S.C. § 1361.

65.    Plaintiff has a clear right to the relief sought.

66.    Plaintiff has met the requirements for a visa under E-11 category as a person of Extraordinary Ability and USCIS approved his I-140 petition on that basis.

67.    Defendants have a non-discretionary duty to reconsider the initial visa refusal. 22 C.F.R. § 42.81(e); *Rivas v. Napolitano*, 714 F.3d 1108 (9th Cir. 2013).

68.    Defendants have failed to fulfill their non-discretionary duty to complete administrative processing and make a final determination on Plaintiff's immigrant visa issuance within a reasonable time.

69.    Federal agencies, including Defendant Embassy, are required to conclude matters presented to them within a "reasonable time." 5 U.S.C. § 555(b).

**70.**    Plaintiff has brought this action because he has no other means to compel Defendants to perform the nondiscretionary duty that Defendants owe Plaintiff.

## SECOND CAUSE OF ACTION:

### (Violation of the APA, 5 U.S.C. §§ 553(b) and 701)

71.    Plaintiff realleges and incorporates by reference, as is fully set forth herein, the foregoing

paragraphs.

72.     The Administrative Procedure Act obligates Defendants to "proceed to conclude a matter presented to it" within a "reasonable time," 5 U.S.C. § 555(b), and provides that courts "shall . . . compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1).

73.     Defendants have a non-discretionary duty to adjudicate immigrant visa issuance or refusal thereof pursuant to Federal regulations at 22 C.F.R. § 42.8(a) which states that the consular officer must either issue or refuse the visa.

74.     Defendants have failed to fulfill their non-discretionary duty to adjudicate or refuse Plaintiff's visa within a reasonable time.

75.     Considering relevant factors such as Congress' intent to set aside a category of immigrant visas to bring individuals of extraordinary ability for the prospective benefit to the U.S. (reserving this benefit for those that fall within one of the small percentage who have risen to the very top of their field of endeavor and allow them to self-petition for an immigrant visa benefit), the scope and extent of the interests harmed by Defendants' delay, Defendants' delay is unreasonable in this case. *See Telecommunications Research & Action Center v. Fed. Communications Comm.*, 750 F.2d 70, 80 (D.C. Cir. 1984). Nor would granting relief cause Plaintiff to jump a queue of similarly situated petitioners.

76.     Defendants' failure to complete administrative processing of Plaintiff's immigrant visa application in almost four years constitutes an agency action unlawfully withheld or unreasonably delayed in violation of 5 U.S.C. § 706(1).

## **PRAYER**

Plaintiff prays for judgment against Defendants and respectfully requests that the Court:

A.      Assume jurisdiction over this matter;

B.      Order Defendants and those acting under them to complete administrative

processing and issue a final decision on Plaintiff's immigrant visa application without

further delay;

C.      Issue a writ of mandamus directing Defendants to complete administrative

processing and issue a final decision on Plaintiff's visa without further delay;

D.      Retain jurisdiction over this matter and any attendant proceedings until

Defendants have issued a final decision in this matter and communicated that decision to

Plaintiff;

E.      Grant reasonable attorney's fees and costs of court under the Equal Access to

Justice Act ("EAJA");

F.      Grant such other relief at law and in equity and justice may require.

Respectfully submitted on this 10th day of May 2023,



_____